**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2367-19

FDASMART, INC.,

    Plaintiff-Appellant,

v.

DISHMAN USA, INC.,

    Defendant-Respondent.

_____

Submitted February 8, 2021 – Decided April 19, 2021

Before Judges Sabatino, Currier, and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7832-13.

Eric J. Warner, attorney for appellant.

Holland & Knight, LLP, attorneys for respondent (Daniel Mateo and Amy McVeigh, on the brief).

PER CURIAM

    In this case, before us for a second time, plaintiff FDASmart, Inc. appeals

from the trial court's post-remand November 28, 2018 order granting summary

judgment to defendant Dishman U.S.A., Inc. and the February 6, 2018 order denying reconsideration.  We affirm.

Dishman Pharmaceuticals and Chemicals, LTD (DPCL) is a multinational corporation incorporated and headquartered in India.  Defendant is a New Jersey corporation with its principal place of business in Middlesex.  It is a wholly owned subsidiary of DCPL.

In April 2013, DPCL, plaintiff, and a consulting firm –PKM[1]– executed a Memorandum of Understanding (MOU) related to DPCL's desire to sell a pharmaceutical manufacturing facility located in China and owned by DPCL's Chinese subsidiary.

Although the first two drafts of the MOU named DPCL as the contracting party, the final draft listed "Dishman Group" as the signatory.[2]  The MOU listed DCPL's address as the address for Dishman Group and DPCL's managing director signed the document.  The MOU stated it was to be governed by and construed in accordance with the laws of India, it required the signature of a

---

[1]  PKM is an Indian company that advises clients on mergers and acquisitions.

[2]  Dishman Group is not a distinct legal entity but is a marketing term that refers to DPCL and its fourteen subsidiaries.  FDASmart, Inc. v. Dishman Pharm. & Chem. Ltd., 448 N.J. Super. 195, 200 n.1 (App. Div. 2016).

A-2367-19

non-disclosure agreement in India and fees were to be paid along with applicable Indian taxes.

Under Phase One of the MOU, plaintiff and PKM were to provide consulting services in connection with the potential sale of the facility. Under Phase Two, plaintiff and PKM would receive a fee of $10,000 for each letter of intent (LOI) they secured from interested buyers who also visited the facility.

Plaintiff sent all invoices to DPCL in India for its services performed under the MOU. It did not send any invoices, provide status updates, or communicate in any manner with defendant.

DPCL only paid plaintiff for one of the five LOIs it submitted. On November 7, 2013, plaintiff sent a final invoice to DPCL's India office indicating it was owed a total of $45,800 for the four unpaid LOIs, late fees, and legal fees. The following day, plaintiff sent a demand letter to DPCL in India and to defendant in Middlesex, stating that if plaintiff was not compensated before the end of the month, it would file suit in New Jersey.

In December 2013, plaintiff filed a complaint against DPCL and defendant for breach of contract and related claims. In lieu of filing an answer, DPCL and defendant moved to dismiss the action, asserting a lack of personal jurisdiction, forum non conveniens, failure to state a claim against defendant, and failure to

3

join PKM as a necessary party. FDASmart, 448 N.J. Super. at 200. The trial court denied the motion without prejudice and permitted the parties to engage in jurisdictional discovery. Ibid.

After the completion of discovery, plaintiff filed a motion for partial summary judgment on the jurisdictional issue; DPCL and defendant opposed the motion and renewed their motion to dismiss. Id. at 201. The trial court granted plaintiff's partial summary judgment motion, finding that: (1) New Jersey had general jurisdiction over DPCL and defendant and was an appropriate forum; (2) plaintiff had stated a claim against defendant; and (3) PKM was not an indispensable party. Ibid.

DPCL and defendant appealed. We reversed the denial of DCPL's motion for dismissal, finding DPCL was not subject to personal jurisdiction in New Jersey and defendant's contacts could not be imputed to DPCL under an alter ego theory. Id. at 205. Therefore, DPCL was entitled to dismissal. Id. at 206. We affirmed the trial court's denial of defendant's motion to dismiss, noting: "The judge properly viewed all inferences in plaintiff's favor and found that DPCL's managing director's signature on the MOU for the contracting party Dishman Group was sufficient to glean an intent to bind all of DPCL's

4

subsidiaries including [defendant]." Ibid. The matter was remanded for further proceedings. Ibid.

In August 2018, both parties filed motions for summary judgment. On November 28, 2018, the trial court issued a comprehensive written opinion granting defendant's motion for summary judgment and denying plaintiff's application.

The court found that defendant could not "be a party or held liable for [DPCL]'s alleged contentions since [defendant] was never a part of the MOU and is a separate legal entity from its parent company." He further found that "[defendant] had no relationship with [p]laintiff . . . since [DPCL] was the only entity involved in the . . . MOU[,]" and "[t]here [was] no evidence that the 3-way MOU included [defendant]." In arriving at his determination, the judge noted DPCL's address was on the MOU, all invoices for payment under the MOU were sent to DPCL's headquarters in India, and defendant had no "involve[ment] in drafting or the negotiation process of the MOU and was not even aware of it until this dispute arose."

Having concluded defendant was not a party to or liable under the MOU, the judge found plaintiff could not sustain its claims for breach of contract or breach of the implied covenant of good faith and fair dealing. The judge also

5

dismissed plaintiff's unjust enrichment claim because defendant did not receive any benefit from plaintiff. In dismissing plaintiff's book account and account stated claims, the court found DPCL and defendant were separate entities and there was "no legal nexus nor any legal theory that would make [defendant] liable for the actions of [DPCL]."

The judge also rejected plaintiff's claim that it was entitled to sanctions against defendant for alleged intentionally false statements made by DPCL's managing director during his deposition. The judge concluded such a remedy was not warranted because defendant had no liability based on the court's finding that there was no relationship with Dishman Group. Furthermore, the alleged misconduct was immaterial to a determination of whether defendant was bound under the MOU; and, even if sanctions were appropriate, the judge could not conclude the statements were intentionally false.

Thereafter, plaintiff moved for reconsideration. In an oral decision on February 6, 2019, the court denied the motion. The judge stated:

> [I] relied on the facts, which were undisputed, that [defendant] had no relationship with . . . plaintiff in reference to the payment obligations and [DPCL] was the only entity involved in the transaction. The [MOU] address for Dishman Group is the address for [DPCL] in India. All the invoices . . . issued by PKM for payment under the contract . . . to [DPCL], which, again, had its address in India. [Defendant] was not

6

involved in the drafting or negotiation of the [MOU]. It was not even aware of it until the . . . initial dispute arose. Plaintiff . . . issue[d] invoices to [DPCL]. No invoices were ever issued to [defendant]. Plaintiff sought payment that referred to [DPCL], not [defendant]. [Defendant] did not receive any benefit from . . . plaintiff.

I also explained that . . . legally, . . . [defendant] and [DPCL] are separate and distinct legal entities and relied on case law for [the] proposition [that] the mere ownership of the (indiscernible) does not provide of liability on the parent, citing [Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160 (App. Div. 2006)].

. . . .

There is no legal basis for me to reconsider the decision. I set forth my decision in a lengthy written opinion, and I'll rely upon that and upon the arguments of defendant in opposition to this motion. Accordingly, I'll deny the motion for reconsideration.

On appeal, plaintiff contends the trial court erred in granting defendant's motion for summary judgment and concluding defendant was not a party to or liable under the MOU. Plaintiff asserts it had a valid contract with defendant, it fully performed its obligations under the contract, and there was sufficient evidence showing defendant was bound under the contract. Plaintiff contends the term "Dishman Group" was used "intentionally to foster a more fluid and flexible manner of performance" and that all of DPCL's subsidiaries are liable

7

under the contract, regardless of each "subsidiary's manner or quantum of involvement or performance."

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (citation omitted). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

"If there is no genuine issue of material fact, [this court] must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citations omitted). We review issues of law de novo and accord no deference to the trial judge's conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

We review the denial of a motion for reconsideration under an abuse of discretion standard. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). Reconsideration is only appropriate in cases "which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a

palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990).

In interpreting contracts, courts ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain. Cruz-Mendez v. ISU/Ins. Servs. of S.F., 156 N.J. 556, 570-71 (1999) (citing Onderdonk v. Presbyterian Homes, 85 N.J. 171, 184 (1981)). In other words, courts are "to consider what was written in the light of the circumstances under which it was written, and give to the language a rational meaning consistent with the expressed general purpose." Dontzin v. Myer, 301 N.J. Super. 501, 507 (App. Div. 1997) (internal citation and quotation marks omitted).

Here, the trial court correctly found the MOU did not include defendant as a party. In making this determination, the court properly considered the MOU's language, the circumstances surrounding the MOU's execution, and the parties' conduct.

The MOU's terms support the court's conclusion that defendant was not a party to it. Defendant's name did not appear on the MOU; instead, the "Dishman Group" was listed as the contracting party although the initial two drafts of the

MOU listed DPCL. The address given for the Dishman Group was the same as DPCL's headquarters and the MOU was signed by DPCL's managing director. Further, the MOU specified: (1) it was to be governed by and construed in accordance with Indian law; (2) a non-disclosure agreement was to be signed in India; and (3) fees and "applicable Indian taxes" were to be paid.

The parties' conduct also supports the finding that defendant was not a party to the MOU. Plaintiff sent all invoices for payment under the MOU to DPCL in India. Plaintiff never provided defendant with any updates or information or otherwise communicated with it during the performance of the MOU. Defendant was not involved in drafting or negotiating the MOU and was not aware of its existence until receiving defendant's demand letter in November 2013. As the trial court stated, defendant "had no relationship with [p]laintiff."

Although defendant was a subsidiary of DPCL, it is nevertheless an independent legal entity from its parent company. FDASmart, 448 N.J. Super. at 199. The MOU's language, the circumstances surrounding the MOU's execution, and the parties' conduct all support the conclusion that plaintiff, PKM and DPCL did not intend to bind defendant to their contract in using the term Dishman Group instead of DPCL. Therefore, there was no breach of contract

and summary judgment was appropriately granted to defendant and reconsideration was appropriately denied.

Any remaining arguments presented by plaintiff lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-2367-19